UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LOUIS GEORGE BLIVEN,

     Plaintiff,

v.                              Case No:   6:13-cv-1150-Orl-18TBS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## REPORT AND RECOMMENDATION

The Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under the Act.

I have reviewed the record, including the administrative law judge's ("ALJ") decision, the exhibits, the administrative record, the transcript of the hearing, and the pleadings and memoranda submitted by the parties.   For the reasons that follow, I respectfully recommend that the Commissioner's final decision in this case be **affirmed**, pursuant to sentence four of 42 U.S.C. § 405(g).

### Background

Plaintiff filed for disability insurance benefits midway through the year 2010,[1] alleging disability beginning April 17, 2010 due to mental and physical stress, fainting

_____

[1] On the "Application Summary for Disability Insurance Benefits" Plaintiff's application date is listed as August 12, 2010. (Tr. 188-89).   However, the disability field office report lists July 24, 2010 as Plaintiff's application date.   (Tr. 196, 241).   The accuracy of Plaintiff's application filing date is irrelevant to the Court's analysis.

spells, anxiety, and depression.   (Tr. 243).   Plaintiff was 49 years old on the date of the

ALJ decision.   (Tr. 54).   He completed the eleventh grade and has past work experience

as a store laborer, catering helper, and bakery worker.   (Tr. 40).   His application was

denied initially and on reconsideration.   (Tr. 53-54, 119-122, 128-130).   On May 3, 2012,

at Plaintiff's request, a hearing was held before the ALJ who issued his decision on May

14, 2012.   (Tr. 23-42, 52-87).   On June 5, 2013, the Appeals Counsel denied Plaintiff's

timely request for review.   (Tr. 1-7).   Plaintiff has exhausted his administrative remedies

and this case is ripe for consideration under 42 U.S.C. § 405(g).

### The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-

step sequential evaluation process established by the Commissioner and set forth in 20

C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).   The ALJ must determine whether the

claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or

combination of impairments that meets or medically equals an impairment listed at 20

C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5)

retains the ability to perform any work in the national economy.   See Phillips v. Barnhart,

357 F.3d 1232, 1237-1240 (11th Cir. 2004).   The claimant bears the burden of

persuasion through step four and, at step five, the burden shifts to the Commissioner.

Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined at step one that Plaintiff had not engaged in substantial

gainful activity since April 17, 2010, his alleged onset date.   (Tr. 26).   At step two, the

ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc

disease, status post lumbar surgery; history of orthostatic hypotension with syncope;

depression; generalized anxiety disorder; and pain syndrome.   (Id.).   At step three, the

ALJ found that Plaintiff did not have an impairment or impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).   (Tr. 26-28).   The ALJ also determined Plaintiff's residual functional capacity.   (Tr. 28-40).   At step four, the ALJ found that Plaintiff was not capable of performing his past relevant work.   (Tr.40).   The ALJ ultimately determined that there were jobs in the national economy, like food and beverage order clerk, surveillance monitor, and addresser, that Plaintiff could perform. (Tr. 41-42).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence.   Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla but less than a preponderance.   It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion."   Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]"   Id.   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."

Foote, 67 F.3d 1533, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979

F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine

the reasonableness of the factual findings).

Discussion

A.  The ALJ Properly Weighed the Medical Evidence

1.  Treating Physicians

Plaintiff argues that the ALJ failed to apply the correct legal standard to the

medical opinions of treating physicians Drs. Jaffe and Vinuela. (Doc. 14 at 14-21).

Weighing the opinions and findings of treating physicians is an integral part of steps four

and five of the sequential evaluation process.   In Winschel, the Eleventh Circuit held that

whenever a physician offers a statement reflecting judgments about the nature and

severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what

the claimant can still do despite his or her impairments, and the claimant's physical and

mental restrictions, the statement is an opinion requiring the ALJ to state with particularity

the weight given to it and the reasons why.   631 F.3d at 1178-79 (citing 20 C.F.R. §§

404.1527(a)(2), 416.927(a)(2)); see also Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.

1987).

Absent good cause, the opinions of treating physicians must be accorded

substantial or considerable weight.   Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).

Good cause exists when the: "(1) treating physician's opinion was not bolstered by the

evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion

was conclusory[2] or inconsistent with the doctor's own medical records."   Phillips, 357

---

[2] Where a treating physician has simply made conclusory statements, the ALJ
may afford them such weight as is supported by clinical or laboratory findings and other
consistent evidence of a claimant's impairments.   Wheeler v. Heckler, 784 F.2d 1073,

F.3d at 1240-41 (citations omitted); see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir.1991).

When a treating physician's opinion does not warrant controlling weight, the ALJ must still consider the following factors in deciding how much weight to give the opinion: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion." Logreco v. Astrue, No. 5:07-cv-80-Oc-10GRJ, 2008 WL 783593, at *10 (M.D. Fla. Mar. 20, 2008). "[T]he Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." Hill v. Barnhart, 440 F. Supp 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted).

a. Dr. Jaffe

Dr. Jaffe specializes in pain management and is board certified in anesthesiology. (Doc. 14 at 4 n. 12).   He treated Plaintiff beginning in May 2010 with the most recent visit occurring in March 2012. (Doc. 14 at 4; Tr. 30, 404). Plaintiff alleges that the ALJ improperly rejected Dr. Jaffe's medical opinion expressed in a questionnaire created in December 2010.   Plaintiff argues that the ALJ's determination that "the doctor failed to provide sufficient clinical and objective evidence to support his opinions" is not based on substantial evidence.   (Doc. 14 at 15).   According to Plaintiff:

> Dr. Jaffe's questionnaire referenced clinical and diagnostic findings of limited range of motion of the lumbar spine, tenderness of the lumbar spine, muscle spasm of the lumbar spine, an abnormal gait requiring a cane, numbness of the right foot, muscle atrophy of the calves and thighs, muscle

_____

1075 (11th Cir. 1986).

> weakness of the back and legs, trigger points in the back,
> fatigue, fainting, nerve conduction studies of the lower
> extremities, and MRI findings.

(Id. at 16) (citing Tr. 558-559).   As an initial matter, Plaintiff's reference to a litany of

diagnostic findings is not helpful to the Court's analysis.   Simply listing diagnoses does

not give the Court any insight into the severity of Plaintiff's limitations or his ability to

perform substantial gainful activity.   The relevant inquiry is the degree to which a

claimant's condition limits his ability to engage in substantial gainful activity.   See Moore

v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of ...

impairments does not reveal the extent to which they limit [Plaintiff's] ability to work or

undermine the ALJ's determination in that regard."); 20 C.F. R. § 404.1545(a) (The

"residual functional capacity is the most you can still do despite your limitations."); Ward

v. Astrue, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) ("[A]

'mere diagnosis ... says nothing about the severity of the condition ... [D]isability

determinations turn on the functional consequences, not the causes, of a claimant's

condition'") (internal citations omitted).

     In deciding how much weight to attribute to the opinion of Dr. Jaffe's medical

assistant in the December 2010 questionnaire,[3] the ALJ identified several problems.

First, even though he did not list it as one of the reasons for discounting the medical

opinion, the ALJ noted that the questionnaire was completed by Dr. Jaffe's medical

assistant, Beverly Collins.   (Tr. 38).   The law is clear that the opinion of a physician's

assistant as it relates to disability is not entitled to great weight.   See Johnson v. Astrue,

---

[3] Plaintiff focuses his argument on the medical questionnaire completed by Dr.
Jaffe's medical assistant in December 2010 and does not offer any argument against the
ALJ's analysis of Dr. Jaffe's other medical opinions.

Case No. 3:07-cv-424-J-TEM, 2008 U.S. Dist. LEXIS 86028, at *16-17, 19-20 (M.D. Fla. Sept. 30, 2008) (citing 20 C.F.R. § 404.1513).

Second, the ALJ stated that when prompted to identify any laboratory or diagnostic test that supported the opinion, the medical assistant admitted "he was waiting for results from a lumbar spine MRI, a tilt table test, and an EEG."   (Tr. 559).   "Waiting for results" logically means that those results were not available and thus not relied upon when the questionnaire was completed.   Thus, the ALJ's conclusion that the questionnaire lacked support, was based on substantial evidence.

Third, the ALJ determined that "[t]he remainder of the [questionnaire] form was completed relatively perfunctorily.   For instance, when asked for the basis of the opinion that claimant was incapable of even low stress work, the medical assistant wrote 'diagnostic studies and physical conditions with expected symptoms.'"   (Tr. 38).   The ALJ concluded that "[t]his is not a rationale for a specific opinion; it merely expresses the tautology that medical opinions are supposed to be based on medical evidence. Nowhere is any specific evidence identified, and naked opinions, which decline to identify the clinical evidence on which they relay are entitled to no weight."   (Id.) (internal citations omitted).

The ALJ noted that "[a]s another example of the lack of support for the [2010 questionnaire] ... the medical assistant indicated that the earliest date from which these limitations applied was May 1, 2007.   Apparently the medical assistant was unaware that the claimant continued to work for fifteen months after that incident."   (Tr. 38).   Plaintiff argues that although the ALJ found it significant that his symptoms began in 2007 even though he worked through 2008, the evidence does not contradict the earlier onset date. (Doc. 14 at 17).   Plaintiff argues that "[i]t cannot be disputed that this earlier date was in

fact the beginning of Mr. Bliven's symptoms and limitations even if they later worsened to the point he could not work."   (Id.).   The ALJ mentioned the May 1, 2007 symptom onset date as another example of the perfunctory nature in which Dr. Jaffe's medical assistant completed the questionnaire.   The ALJ said: "The remainder of the form is completed relatively perfunctorily.   **For instance**, when asked for the basis of the opinion that the claimant was incapable of even low stress work, the medical assistant wrote ... **As another example** of the lack of support for this opinion ..." (Tr. 38) (emphasis added).

The ALJ is correct that the reference to the May 2007 date was made without any mention of Plaintiff's 2008 return to work or any explanation of the specific factors that caused Plaintiff's symptoms to worsen to a point that would prompt him to apply for disability benefits, which is the purpose for which the questionnaire was completed.[4]   It was not necessary for the ALJ to develop the record any further in this regard because Plaintiff's post-accident return to work is well documented throughout the record (Tr. 23, 200, 292) and the ALJ was able to make an informed decision about Plaintiff's eligibility for disability benefits without further elucidation on the opinions of Dr. Jaffe's medical assistant.[5]

The Court need not address Plaintiff's argument that the 2010 opinion was not contradicted by any other evidence except an opinion from a non-examining consultant.

---

[4]  The questionnaire leads with the following statement: "Please answer the following questions concerning your patient's impairments. **Attach all relevant radiologist reports, laboratory and test results which have not been provided previously to the Social Security Administration or to Binder & Binder."**   (Tr. 558) (emphasis in original).

[5]  The ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."   Hamby v. Comm'r of Soc. Sec. Admin., No. 11-11455, 2012 WL 2547174, at *2 (11th Cir. July 3, 2012) (quoting Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007)).

(Doc. 14 at 17).   The record supports the ALJ's rejection of the 2010 opinion as being unsupported by objective medical findings, which is sufficient grounds for the ALJ to reject the medical evidence.   See Phillips, 357 F.3d at 1240-41.   For these reasons, I conclude that the ALJ's analysis of the opinion drafted by Dr. Jaffe's medical assistant is supported by substantial evidence and respectfully recommend that the district court reject Plaintiff's argument on this point.

> b.  Dr. Vinuela

Dr. Vinuela specializes in psychiatry.   He treated Plaintiff beginning on December 2, 2010, with the most recent visit occurring on February 29, 2012.   (Doc. 14 at 9-11 n. 20).   Plaintiff argues that the ALJ afforded Dr. Vinuela's opinion minimal weight because it was contradicted by the opinion of a non-examining state agency psychologist.   (Doc. 14 at 19).   Plaintiff maintains that Dr. Vinuela's opinion boasts "extensive clinical and diagnostic support."   (Id. at 20).

Dr. Vinuela completed a "Psychiatric/Psychological Impairment Questionnaire" in December 2011, in anticipation of Plaintiff's application of social security benefits.[6]   In analyzing that opinion, the ALJ explained:

> In December 2010, the claimant began mental health
> treatment with Luis Vinuela, M.D.   (Ex. B32F.)   At intake, a
> brief note of the claimant's mental status examination stated
> that he was alert, pleasant, in no acute distress, but with
> depressed mood and anxious affect.   (Id. at 4.)   His intake
> diagnosis was major depressive disorder and generalized
> anxiety disorder with a rule-out diagnosis of post-traumatic
> stress disorder.   (Id.)   The claimant's GAF score was rated at
> 40.   (Id.)

---

[6]  The questionnaire leads with the following statement: "Please answer the following questions concerning your patient's impairments.   **Attach all relevant radiologist reports, laboratory and test results which have not been provided previously to the Social Security Administration or to Binder & Binder.**"   (Tr. 616) (emphasis in original).

Despite this low GAF score, the claimant was only seen every other month for medication management.   (Ex. B32F.)   The brief session notes contain mental status examinations largely consistent with that made at intake.   (Id.)   I note that in June and August, the claimant's mood was recorded as "mildly depressed," although by November this reverted back to "depressed."   (Id.)   This was the case at his next visit, which is also his most recent visit, in February 2012. (Ex. B34F.)

As discussed, despite the apparent lack of progress, the claimant did not seek to increase the frequency of his visits or substantially change his medication regimen.   (Id.)   When asked at the hearing why the claimant did not pursue these approaches, he gave a non-responsive answer.   (Hearing Testimony.)

. . . .

The claimant's psychiatrist, Dr. Vinuela, also completed a questionnaire in December 2011.   (Exs. B33F; B37F.)   He diagnosed the claimant with major depressive disorder, generalized anxiety disorder, and PTSD.   (Id.)   I note that at intake, Dr. Vinuela included PTSD as a "rule-out" diagnosis, and his subsequent session notes do not appear to determine whether the claimant displayed the full diagnostic criteria of PTSD (such as a precipitating trauma or symptomatology such as hypervigilance).   Accordingly, I reject Dr. Vinuela's diagnosis of PTSD as not having been made in conformity with accepted diagnostic procedures.   The claimant's GAF score was rated at 45-50.   (Id.)   He found the claimant to be incapable of even low-stress work and would be likely to miss more than three days of work per month.   (Id.)

Dr. Vinuela asserted that these views are based on his "mental status examinations at each visit."   (Id. at 6.)   I note, however, that the recorded observations at those sessions do not support his extreme restrictions.   At intake, a brief note of the claimant's mental status examination stated that he was alert, pleasant, in no acute distress, but with depressed mood and anxious affect.   (Ex. B32F at 4.)   His intake diagnosis was major depressive disorder and generalized anxiety disorder with a rule-out diagnosis of post-traumatic stress disorder.   (Id.)   The claimant's GAF score was rated at 40.   (Id.)   In June and August, the claimant's mood was recorded as "mildly depressed," although by November this reverted back to "depressed."   (Id.) This was the case at his next visit, which is also his most recent visit, in February 2012.   (Ex. B34F.)   Nor does the claimant's course of treatment support these limitations.   Indeed, the claimant was only seen

>approximately every two to three months for medication management.   (Exs. B32F; B34F.)   Overall, because it strays from both his clinical observations and in light of the conservative and infrequent treatment approach taken, I find Dr. Vinuela's opinion to be unsupported by the evidence and give it minimal weight.

(Tr. 35-36, 39).   Despite Plaintiff's assertions, the ALJ did not use the testimony of a non-examining state agency psychologist to contradict Dr. Vinuela's medical opinion. Instead, the ALJ determined that Dr. Vinuela's treatment records and conservative medication management did not support such extreme mental limitations and that his opinions were internally inconsistent.   Accordingly, the ALJ's ultimate decision to afford Dr. Vinuela's opinion minimal weight is supported by substantial evidence.

### 2.  Examining Physician

Plaintiff argues that the ALJ failed to apply the correct legal standard to the medical opinions of examining psychologist, Dr. Stewart.   (Doc. 14 at 21).   The Eleventh Circuit has held that "[t]he ALJ must state with particularity the weight given different medical opinions and the reasons for doing so, and the failure to do so is reversible error. Generally, the opinions of examining physicians are given more weight than non-examining, treating more than non-treating, and specialists on issues within their areas of expertise more weight than non-specialists."   Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) (internal citations omitted); see also McCloud v. Barnhart, 166 F. App'x 410, 418-19 (11th Cir. 2006) (The court found that the ALJ failed to explain the weight he gave a consulting physician's report and stated that while the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," the ALJ is, however, "required to state with particularity the weight he gives to different medical opinions and the reasons why.").

Plaintiff argues that "the fact that Dr. Stewart evaluated Plaintiff based on a referral from his attorney is not good reason to question the validity of the report."  (Doc. 14 at 21).   The ALJ clearly gave Dr. Stewart's opinion little weight because it was conclusory and unsubstantiated by medical evidence, not because it was rendered in anticipation of litigation:

> The claimant also underwent a psychological evaluation with Donald Stewart, Psy.D., to whom the claimant was referred by his representative.  (Exs. B35F; B36F.)   This was a one-time visit and not a treating relationship.   Dr. Stewart's narrative largely recounts the claimant's physical medical history and gives conclusory assertions of the claimant's functioning.   For instance, Dr. Stewart wrote, "social functioning is restricted by physiologic and psychiatric complications."   (Ex. B36F at 2.) No specific clinical signs, or even subjective complaints, are supplied to substantiate this view.   Again, Dr. Stewart wrote, "decompensation and deterioration under duress is quite likely," but no evidence is provided for this conclusion.   (Id.) Opinion evidence is valued to the extent that it sets forth clinical evidence and documents the application of medical or psychological learning and experience to that evidence in order to deduce informed conclusions.   This must particularly be so when the opinion originates from a one-time examining practitioner- without such documented support, all that remains is a statement that flatly concludes disability from a person, selected by the claimant's representative, who also happens to have a physician's or psychologist's license. Where an opinion omits those first two steps and merely offers up bare, unsupported conclusions, as here, the opinion is entitled to no weight, which is level of weight I give to Dr. Stewart's opinion.

(Tr. 39); see (Tr. 625-632).   Based upon the ALJ's clear and persuasive explanation of his rationale, I respectfully recommend the district court reject Plaintiff's argument on this point and affirm the ALJ's decision.

B. <u>The ALJ Properly Evaluated Plaintiff's Credibility</u>

Plaintiff argues that the ALJ failed to correctly apply the Eleventh Circuit's pain standard when discrediting his pain testimony, in violation of SSR 96-7P.   (Doc. 14).   In response, Defendant maintains that substantial evidence supports the ALJ's findings that Plaintiff's statements were not fully credible and that the ALJ's finding is consistent with SSR 96-7P and the Eleventh Circuit's pain standard.   (Doc. 15).

In the Eleventh Circuit, "[i]n order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."   Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); Singleton v. Comm'r Soc. Sec., No. 6:12-cv-683-Orl-GJK, 2013 WL 5236678, at *5 (M.D. Fla. Sept. 17, 2013); see also SSR 96-7P, 1996 WL 374186, at * 2 (1996).   Under the law, "[i]f the ALJ discredits subjective testimony, [s]he must articulate explicit and adequate reasons for doing so." Id.

It is apparent from the ALJ's decision that he considered all the evidence.   While the ALJ found that Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, the ALJ concluded that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was not credible.   (Tr. 32).   In making his credibility determination, the ALJ explained:

> In addition to the objective evidence, I have considered the factors enumerated in SSR 96-7p in evaluating the intensity, persistence and limiting effects of the claimant's symptoms as well as the credibility of the claimant's allegations.   Here, the claimant's activities of daily living lend further support to my residual functional capacity.
>
> Although the claimant's function reports (and those of his wife)

describe limited daily activities (Exs. B4F; B5F; B11F; B12F), in his testimony, he described a more expansive range of activities.   He testified that he spends most of his time at home, pacing around the house.   (Hearing Testimony.)   He stated that he alternates between his living room and kitchen.   (Id.)   These descriptions suggest a greater mobility than has been alleged and simple meal preparation.   (Id.)   He testified to performing housework, such as sweeping, dusting, and mopping.   (Id.)   More importantly, he described driving to the park and to the mall for recreational outings.   (Id.)

When relating his July 2010 syncope event, he indicated that he had been out to dinner with his wife and friends (Ex. B8F at 2), again suggesting a wider range of activities than he alleged.

His treatment history has been conservative and infrequent.   After 2010, the claimant saw Dr. Jaffe about semi-annually and his psychiatrist about quarterly.   (Exs. B30F; B32F; B34F; B38F.)   Treatment from these practitioner consisted almost entirely of medication management.   (Id.)   The claimant did have medial branch blocks from Dr. Jaffe, but he said that they were ineffective and declined any more aggressive treatment, saying he wanted to determine if he could live his current condition.   (Ex. B30F at 4.)   The claimant made a similar remark at his hearing, stating that perhaps he was "happy the way [he is]" although he immediately corrected himself (Hearing Testimony.)   Likewise, when I asked the claimant why he did not pursue more intensive mental health treatment if quarterly medication management sessions were not proving effective, the claimant did not provide a responsive answer.   (Id.)

Most damaging to the claimant's credibility is the extreme vagueness of his allegations.   Throughout his filings and in his testimony, the claimant never articulates anything more than the contention that "complications" produce his subjective complaints of dizziness, pain, and fatigue.   The medical evidence, including two tilt table tests designed to reproduce his syncope, do not lend support to those allegations.   While the claimant may experience symptoms that cannot be fully shown by objective evidence, here, in light of the extreme vagueness and conclusory nature of the claimant's allegations, the possibility that these allegations are exaggerated is particularly large.

Moreover, the claimant has shown some lack of candor both to his physicians and in the hearing. He informed his

> neurologist, who was treating him for syncope, that he was
> discontinued from narcotic pain medication due to taking an
> excess of them.  (Ex. B19F at 1-3.)  However, as the
> claimant knew, it was because he had tested positive for
> cocaine use.  (Ex. B17F at 5.)
>
> . . . .
>
> Consequently, while a claimant's subjective complaints may
> suggest genuine limitations in functioning that the objective
> evidence is not able to demonstrate adequately, in this
> instance, in light of the claimant's activities of daily living,
> treatment history, and other inconsistencies, I find that the
> claimant's alleged symptoms are not credible to the extent that
> they deviate from the objective medical evidence.

(Tr. 36-37).   Plaintiff is correct that participation in activities of daily living does not

necessarily preclude a finding of disability.   See Lewis v. Callahan, 125 F.3d 1436, 1441

(11th Cir. 1997).   But, the ALJ did not rely solely on Plaintiff's daily activities in

discounting his testimony. Lewis does not stand for the notion that an ALJ must never

consider a claimant's daily activities, or that an ALJ's consideration of such activities

warrants remand.   The ALJ is meant to consider a claimant's daily activities in

combination with other factors, as stated in 20 CFR § 404.1529(c).   See Slaughter v.

Astrue, No. 8:10-cv-2353-T-TGW, 2011 WL 4551563, at *5 (M.D. Fla. Sept. 30, 2011).

And, Plaintiff has not shown how his daily activities are inconsistent with the RFC and/or

consistent with his alleged disabling symptoms.

Plaintiff does not deny that his prescribed medical treatment has been

conservative in nature, but argues that he should not "be faulted for not undergoing

additional surgery on his back" because his first surgery did not improve his symptoms.

(Doc. 14 at 23).   In analyzing Plaintiff's credibility, the ALJ did not consider whether

Plaintiff should undergo an additional spinal surgery.   Instead, the ALJ focused on the

medical evidence that showed that Plaintiff's treatment consisted "almost entirely of

medication management" and that Plaintiff generally did not pursue more intensive treatment.   (Tr. 36).   The ALJ also considered Plaintiff's repeated statements dismissing the necessity of more aggressive treatment and entertaining the possibility of him being capable of living with his current condition.   (Id.) (citing Tr. 64, 577).   The ALJ's consideration of this evidence along with other factors, like Plaintiff's evasiveness with regards to the ALJ's questions concerning his treatment history, supports the ALJ's adverse credibility finding.   Jones v. Astrue, Civil Action No. 11-510-DLD, 2012 WL 4325661, at * 5 (M.D. La. Sept. 20, 2012) (citing Parfait v. Bowen, 803 F.2d 810, 813-14 (5th Cir. 1986)).

Plaintiff argues that although he made inconsistent statements "about why he stopped taking narcotics, there is no indication that his statement was meant to deceive. There is no allegation he has a substance abuse problem or that his single use of cocaine is related to his disability."   (Doc. 14 at 24).   Whether or not Plaintiff has a substance abuse problem is irrelevant.   It is the ALJ's responsibility to assess Plaintiff's credibility in order to decide whether to believe his subjective complaints of pain.   Plaintiff's veracity - and any statement or action that undermines it - is relevant for this purpose.   See Griffey v. Astrue, No. 1:08-cv-786, 2009 WL 4396520, at *15 (S.D. Ohio Dec. 1, 2009) ("The ALJ's consideration of the veracity of Plaintiff's claims and her credibility was based on a thorough review of the objective and other evidence in the record.   Accordingly, the ALJ's credibility assessment was substantially supported by evidence in the record."). Generally, a claimant's evasiveness and inconsistency provide substantial evidence on which to support an adverse credibility finding. See Shew v. Colvin, 956 F. Supp 2d 1046, 1056 (E.D. Mo. 2013); see also Olarte v. Astrue, No. ED CV 12-835-SP, 2013 WL 319283, at *8 (C.D. Cal. Jan. 25, 2013) (citing Anderson v. Sullivan, 914 F.2d 1121, 1123-

24 (9th Cir. 1990)).   Here, the ALJ reasoned that Plaintiff's allegations are extremely

vague and conclusory and that "the possibility that these allegations are exaggerated is

particularly large."   (Tr. 36-37).   After reviewing the evidence, the ALJ determined that

Plaintiff "has shown some lack of candor both to his physicians and in the hearing.   He

informed his neurologist, who was treating him for syncope, that he was discontinued

from narcotic pain medication due to taking an excess of them.   However, as the

claimant knew, it was because he had tested positive for cocaine use."   (Tr. 37) (citing

Tr. 497, 517-19).   The ALJ also considered Plaintiff's testimony at the hearing:

> At the hearing, I asked the claimant who referred him to Dr.
> Jaffe: the claimant gave a variety of names but said he was
> not sure.   (Hearing Testimony.)   Only upon asking him
> directly if it had been his attorney did the claimant state that he
> seemed to recall that it was.   (Id.)   Similarly, when I asked
> the claimant why his treatment had been so infrequent, he
> stated that "maybe financial" reasons limited his treatment.
> (Id.)   When I reminded him that he had earlier testified to
> receiving a $133,000.00 settlement in that year, he deflected
> the contradiction by stating that he did not "know exact dates."
> (Id.).

(Tr. 37) (citing Tr. 60-63).   Upon due consideration, I conclude that the ALJ's adverse

credibility determination is supported by substantial evidence and respectfully

recommend that the district judge reject Plaintiff's argument on this point.

### C.  The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff argues that the ALJ relied on flawed vocational expert (VE) testimony.

(Doc. 14 at 24-25). At the hearing, the ALJ posed the following hypotheticals to the VE:

> Q. I'd like to ask you a hypothetical question.   I'd like you to
> assume an individual of the claimant's age, education and
> past work experience.   I'd like you to assume that this
> individual is capable of performing light work as the
> regulations define that term.   This individual is further limited
> by the need to avoid temperature extremes, heat or cold; can
> occasionally bend, stoop; no crouching or crawling; occasional
> squats; no climbing ladders, ropes or scaffolds; no work with

> hazards.   This work should be simple, routine and repetitive.
> It should involve only occasional decision making and
> occasional work place changes, if any.   And I would also limit
> standing to two hours in an eight hour work day.   Consistent
> with the definition of light work, standing would be limited to
> two hours.
>
> . . . .
>
> Q I'd like to ask you a second hypothetical question.   Assume
> all the limitations from the first [hypothetical] but assume that
> consistent with the claimant's testimony that he's able to stand
> from one to three hours at a time in an eight hour work day
> after which he needs to sit down.   Would that change the
> exertional category at all?

(Tr.82-83).

Plaintiff argues that his RFC is not supported by substantial evidence for the reasons set forth in his first objection to the ALJ's decision.   (Id. at 24-25).   The Court has rejected Plaintiff's contentions as they relate to the amount of weight afforded to the opinions of certain treating and examining physicians, as explained in section A, *supra*. Therefore, I reject Plaintiff's argument as a basis for challenging the VE testimony.

Plaintiff also argues that,

> The ALJ failed to present a hypothetical to the vocational
> expert that accurately represented all the mental limitations
> found for [Plaintiff].   The ALJ conceded that [Plaintiff] has
> moderate difficulties in social functioning and moderate
> difficulties in concentration, persistence, or pace.   However,
> the accepted hypothetical to the VE only limited Plaintiff to
> simple, routine, and repetitive tasks with only occasional
> decision making and workplace changes.

(Id. at 25) (citing Tr. 26-27).

"Mental limitations such as concentration, persistence, and pace, are generally considered as part of the psychiatric review technique [PRT] described in 20 C.F.R. §§ 404.1520a and 416.920a, in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings."   Kinnard v. Astrue, No. 8:09-cv-628-T-

24AEP, 2010 WL 3584583, at *5 (M.D. Fla. Aug. 26, 2010) (citing SSR 96-8p, 1996 SSR

LEXIS 5).   The PRT and the RFC are indeed distinct.   Winschel, 631 F.3d at 1180.

But, when the ALJ makes a finding that a claimant is limited in maintaining concentration,

persistence or pace as part of the PRT, he must account for those limitations in the

hypothetical question to the VE unless "medical evidence demonstrates that a claimant

can engage in simple, routine tasks or unskilled work despite limitations in concentration,

persistence, and pace," in which case, "limiting the hypothetical [either explicitly or

implicitly] to include only unskilled work sufficiently accounts for such limitations."   Id.;

see also Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872 (11th Cir. 2011) (an ALJ's

hypothetical restricting the claimant to simple and routine tasks adequately accounts for

restrictions related to concentration, persistence and pace where the medical evidence

demonstrates that the claimant retains the ability to perform the tasks despite

concentration deficiencies.).

     The ALJ expressly noted that despite moderate limitations in concentration,

persistence and pace, the medical evidence supported a finding that Plaintiff "seemed

mentally capable of independently performing routine tasks with brief lapses in focus;

needs a work environment with only brief interactions with others; and seemed capable of

negotiating usual work hazards and changes."   (Tr. 40).   The ALJ relied on the medical

opinion of consultant Dr. Eric Weiner (Tr. 438), as affirmed by state agency consultant Dr.

Theodore Weber (Tr. 556), both of whom the ALJ accorded substantial weight.   See (Tr.

40).[7]   In light of this medical evidence, I conclude that the ALJ's hypothetical to the VE

---

[7] In a single sentence, Plaintiff argues that "the ALJ in this case did not include any
limitations in [Plaintiff's] social functioning in the accepted hypothetical."   (Doc. 14 at 25).
Plaintiff failed to provide a legal basis for this argument, as Winschel focuses on the
limitation of concentration, persistence, and pace, and does not expressly address
limitations in social functioning.   Nevertheless, as stated above, the medical evidence

was based on substantial evidence. Therefore, upon due consideration, I respectfully recommend that the district court reject Plaintiff's argument on this point.

### Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1. The Commissioner's final decision in this case be **AFFIRMED**

2. The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on August 7, 2014.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record

---

supports the limitation that Plaintiff have only brief interactions with others in his work setting, which is implicitly accounted for in the first hypothetical to the VE.